IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HELLER EHRMAN LLP, | No. 10-cv-03134 JSW |
| Debtor, | |
| / | **ORDER REGARDING BANKRUPTCY APPEAL** |

Now before the Court is the appeal filed by appellant 333 Bush Associates NF, L.P., (the "Landlord") from the final order by the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") dated June 21, 2010 in favor of Heller Ehrman LLP (the "Debtor"). Pursuant to Civil Local Rule 16-4, the Court deems this case submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, and good cause appearing, the Court hereby AFFIRMS the Bankruptcy Court's judgment.

**BACKGROUND**

The Landlord leased office space at 333 Bush Street, in San Francisco, California to the Debtor. (Opening Brief of Appellant ("Br.") at 4.) The lease was scheduled to terminate on June 30, 2018. (Br. at 4.) On December 28, 2008, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Br. at 3.) Following the Debtor's Chapter 11 filing, the parties filed a motion to reject the lease on May 1, 2009. (Motion to Reject Lease, Administrative Record ("AR"), Pt. 1 at 1-2.) The Bankruptcy Court granted the motion to reject the lease on June 2, 2009. (Br. App., Ex. G at 1-2.)

1    On July 1, 2009, the Landlord filed a proof of claim against the Debtor for
2  $15,924,71.23 in damages resulting from the rejection of the Lease. (Br. at 4.) The Debtor
3  objected to the Claim, asserting that the Landlord misapplied section 502(b)(6) of the
4  Bankruptcy Code to calculate the damages. (Br. at 4.) The parties disputed whether the 15%
5  statutory cap of section 502(b)(6) limits the claim to rent that would have been due during the
6  first 15% of the remaining time on the lease or 15% of the aggregate remaining rent due under
7  the lease. (*See* Parties' Objection and Response, AR, Pts. 6-7.) The Debtor argued that the
8  correct amount was $13,610,427.25 because the 15% cap applies to the first segment of time
9  remaining on the lease (the "time approach"). (Debtor's Objection, AR, Pt. 6 at 1-2.) The
10 Landlord argued that the 15% cap applies to the remaining aggregate rent (the "aggregate rent
11 approach"), resulting in the amount of $15,924,71.23. (Response of BREF 333, LLC, AR, Pt. 7
12 at 2.) The Bankruptcy Court sustained the Debtor's objection and disallowed a portion of the
13 claim, holding that the 15% limitation is measured in terms of time and not rent. (Order
14 Sustaining Debtor's Objection, AR, Pt. 9 at 1-2.) On September 3, 2010, the Landlord filed an
15 appeal before this Court. (Br. App., Ex. H at 1-2.)

## ANALYSIS

### A.   Standard of Review of Bankruptcy Court's Judgment

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. On appeal, a district court must review a bankruptcy court's conclusions of law de novo. Fed. R. Bankr. P. 8013; *see also Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007). A question of statutory interpretation is an issue of law. *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986). In this matter, the facts are undisputed.

### B.   The Bankruptcy Court Did Not Err In Its Conclusions of Law

The issue on appeal is whether the Bankruptcy Court erred in holding that the 15% limitation of section 502(b)(6) of the Bankruptcy Code applies to time and not rent. The Landlord contends that the Bankruptcy Court erred in its holding because (1) the plain meaning of the statute's language supports the aggregate rent approach; (2) due to the statute's

ambiguity, the Bankruptcy Court should have reviewed the statute's purpose and legislative history, which support the aggregate rent approach; and (3) equitable principles favor the aggregate rent approach. The Court will address each argument in turn.

### 1. The Plain Meaning of the Statute's Language Supports the Time Approach

The Landlord contends that the plain meaning of the statute's language supports the aggregate rent approach. When interpreting a statute, courts must first look to its text. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Courts generally construe terms in accordance with their "'ordinary, contemporary, common meaning.'" *United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir. 1998) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Section 502(b)(6) of the Bankruptcy Code limits the damages a lessor may claim for the rejection of a real property lease to:

> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>
>   (i) the date of the filing of the petition; and
>
>   (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6). The Landlord argues that the word "term" in subsection (A) refers to the total rents due under the lease rather than a period of time. (Br. at 7.) Accordingly, the word "term" could be exchanged with other similarly broad terms such as "life" or "remainder." (*Id.*) Thus, the Landlord argues, the one-year and 15% limitations are two distinct, alternative ways of calculating the allowable claim. (Reply Brief of Appellant ("Reply Br.") at 3.) The Debtor argues that the word "term" is a measurement of time, referring to the remaining time period left on the lease. (Responding Brief of Appellee ("Resp. Br.") at 2.) Indeed, courts and commentators are divided over this dispute whether the 15% cap applies to time or rent. *See In re Connectix Corp.*, 372, B.R. 488, 491 (Bankr. N.D. Cal. 2007) (discussing the conflicting authorities).

1   The Court agrees with the determination by the Bankruptcy Court that the Landlord's
2   argument does not comport with the grammatical structure of the statute. (*See* Transcript of
3   June 18, 2010 Hearing on Debtor's Objection, AR Pt. 8 ("Tr.") at 5-6.) Structurally, in
4   comparing the greater or lesser of two things, the measurements of those things must be
5   parallel, e.g. time versus time. (*See* Tr. at 8.) The statute allows landlords to claim damages in
6   the amount of rent reserved for the greater of one year or 15% of the remaining term. 11 U.S.C.
7   § 502(b)(6)(A). Because "one year" is inherently temporal, the phrase "remaining term"
8   necessarily refers to time. (Tr. at 12.) This establishes that the statute measures "rent reserved
9   within time periods." (*Id*.) *See also In re Ace Electrical Acquisition, LLC*, 342 B.R. 831, 833
10  (Bankr. M.D. Fla. 2005) ("the 'greater of' phrase contemplates two time periods, one year and
11  15 percent of the remaining term"). Therefore, the sentence structure of the statute supports the
12  time approach.

13  An ordinary reading of the statute is consistent with this reasoning. The phrase "term of
14  a lease" commonly refers to the length of a lease based on time rather than rent. *Connectix*, 372
15  B.R. at 493. In addition, the statute is generally written in terms of time: the calculation of the
16  cap begins following the earlier of two dates, the date of petition or repossession, the maximum
17  cap is worded in terms of time, three years, and the statute requires the rent to be calculated
18  "without acceleration." *See Sunbeam-Oster Co. v. Lincoln Liberty Ave., Inc.*, 145 B.R. 823, 828
19  (W.D. Pa. 1992 ) ("the statute provides that claims cannot exceed the greater of *one year*, or 15
20  percent, not to exceed *three years*, of the remaining term, following the earlier of the *date* of the
21  filing of the petition and the *date* surrendered"); *In re Iron Oak Supply Corp.*, 169 B.R. 414,
22  420 (Bankr. E.D. Cal 1994) ("The phrase 'without acceleration' only makes sense in terms of a
23  reference to the next succeeding periods under the lease. Taking 15 percent of all the rent for
24  the remaining term, especially where escalation clauses are present, would be tantamount to
25  effecting an acceleration.").

26  The Landlord asserts that the phrase "without acceleration" existed in the statute prior to
27  Congress's adoption of the 15% limitation, and therefore refers to the one year limitation alone.
28  (Reply Br. at 4.) The Landlord argues that the phrase "without acceleration" could also mean

4

that reserved rent should be calculated without application of any acceleration clause, which would require that all rent payments become due upon the commission of a material breach by the tenant. (*Id.* (citing *Sunbeam-Oster*, 145 B.R. at 827).) The Landlord argues that "acceleration" therefore does not refer to future time periods on the lease, but to any acceleration clause the lease may have. (*Id.*) The Landlord cites *Sunbeam-Oster* in support of its contention that "without acceleration" refers only to the "one year" period and not the 15% calculation, but the court that posited this interpretation nevertheless applied the time approach to the 15% cap. *See Sunbeam-Oster*, 145 B.R. at 828. Even if the "without acceleration" clause does not apply to the 15% calculation, the ordinary meaning of the terms and the contextual language support the time approach.

Although the Ninth Circuit has not squarely addressed the issue of time versus rent in applying section 502(b)(6), the court adopted the time approach in addressing the congressional intent of the statute in *In re El Toro Materials Co., Inc.*, 504 F.3d 978, 980 n.3 (9th Cir. 2007). There, the Ninth Circuit did not decide the issue whether the 15% limitation applies to time or rent; however, the court did apply the time approach to calculate what the maximum limitation would be under the cap. The court noted,

> [t]he structure of the cap suggests congressional concern about damages from long-term leases spanning many years: [t]he cap maxes out at 15 [percent] of 20 years, or 3 years' rent. A claim for lost rent for a full 20 years would in many cases overwhelm any other claims against the estate.

*Id.* The Ninth Circuit's calculation of the 15% cap based on the 20 years remaining on the lease in *El Toro* is consistent with a plain reading of the statute to apply the time approach to section 502(b)(6). Therefore, the Court holds that the Bankruptcy Court did not err in applying the time approach.

**2.     The Statute's Purpose and Legislative History Support the Time Approach**

The Landlord argues that the statute is ambiguous and that the statute's legislative history supports the aggregate rent approach. (Br. at 7, 9.) A statute is ambiguous if reasonably well-informed persons could understand its meaning in two or more different senses. *Tahoe Regional Planning Agency v. McKay*, 769 F.2d 534, 537 (9th Cir. 1985). If a statute is ambiguous, the court may look to the statute's overall purpose and legislative history to resolve

5

the ambiguity. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009). The fact that a statute has been interpreted differently by different courts is evidence that the statute is ambiguous and unclear. *United States v. Iron Mt. Mines*, 812 F. Supp. 1528, 1557 (E.D. Cal. 1993). Thus, the split in authority over how to apply the 15% calculation indicates that the language is ambiguous. *See Connectix*, 372, B.R. at 491. The Court agrees with the Bankruptcy Court's reasoning that the plain meaning of the language supports the time approach, but to the extent that the language is ambiguous, the Court holds that the statute's purpose and legislative history support the time approach.

The purpose of the statutory cap is to compensate landlords for damages while preventing large claims based on long-term leases from precluding other creditors from recovering a dividend from the estate. H.R. Rep. No. 95-595, at 353 (1977), *reprinted in* COLLIER ON BANKRUPTCY, vol. C, App. Pt. 4(d)(i) (16th ed. 2010). According to the Sixth Circuit, Congress intended to "strike a balance between 'compensat[ing] the landlord for his loss' together with a 'limited sacrifice' to protect other creditors and the debtor's rehabilitation . . . ." *Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794, 802 (6th Cir. 1989). Prior to 1934, landlords could not recover lost rent from bankrupt tenants because future lease payments were deemed contingent and unprovable. *El Toro*, 504 F.3d at 979. The 1934 and 1938 amendments to the Bankruptcy Act allowed landlords in liquidation cases to recover future rent for "the year next succeeding" the date of surrender or reentry, whichever occurred first. *See Connectix*, 372 B.R. at 492. The Act had a similar limitation for rehabilitation cases for the next succeeding three years. *Id.* The Bankruptcy Reform Act of 1978 combined the two caps into a "sliding scale," removed the words "next succeeding," and added the additional 15% limitation. H.R. Rep. No. 95-595 at 353. This change was "designed to protect the long-term lessor, and is included as a replacement of the dual provisions. . . ." *Id.* Therefore, Congress effectuated the statute's purpose by allowing for a slightly larger recovery based on the term of the lease, while still limiting the claim.

The Landlord contends that the deletion of the phrase "next succeeding" indicates that Congress intended an aggregate rent approach. (Reply. Br. at 5.) While courts must presume

6

Congress intends for statutory amendments to have a real and substantial effect, courts "'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998) (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 563 (1990)). The Supreme Court has been "reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice if it is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992). Removal of the phrase "next succeeding" does not clearly indicate that Congress intended to add a new aggregate rent approach to the pre-1978 time approach when just the one-year and three-year time limitations were in place. *See Connectix*, 372 B.R. at 493 (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957) ("no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed."). Without the words "next succeeding," the calculation for the one year or three year limitation still begins "following the earlier of" the petition date or the date of surrender or repossession. There is no indication from Congress that a rent-based calculation should apply to the 15% limitation.

The Landlord also contends that the House Report's statement about the sliding scale being "designed to protect the long-term lessor" demonstrates Congress's intent to calculate the 15% limitation in terms of rent. (Reply. Br. at 6.) The Landlord supports this argument by suggesting that rent generally increases over time, so the aggregate rent approach produces a "sampling" of the total rent as opposed to rent due at only the beginning of the term. (Br. at 14.) However, the sliding scale benefits long-term lessors even under the time approach. By taking a percentage of the time remaining of the lease, the longer the remaining life of the lease, the more the lessor is able to claim until the lease term exceeds twenty years. *See Iron Oak Supply*, 169 B.R. at 419 n.8. ("[T]he break-even point at which one year equals 15 percent of the remaining term of the lease is 80 months ($12/.15 = 80$). The break-even point for three years is 240 months ($36/.15 = 240$).") Thus, long-term lessors can now claim more than just the one year limitation that existed prior to 1978. Because both interpretations favor the long-term

7

lessor, absent any indication from Congress to apply a rent-based methodology of calculating the 15% limitation, the legislative history favors the time approach.

The Landlord relies on *In re Gantos*, 176 B.R. 793, 796 (Bankr. W.D. Mich. 1995) to support the proposition that the legislative history and congressional intent favor the aggregate rent approach. (Br. at 10.) However, the court in *Gantos* did not discuss how the legislative history supports the aggregate rent approach; it merely stated that the aggregate rent approach employs the most natural reading of the statute and that it does not frustrate Congress's intent. *Gantos*, 176 B.R. at 796. Other cases upon which the Landlord relies also provide very little explanation as to how the aggregate rent approach furthers legislative intent. *See In re Watkins Mgmt Group, Inc.*, 120 B.R. 586, 587-88 (Bankr. S.D. Ala. 1990) (citing the legislative history and concluding the aggregate rent approach is correct without explanation); *In re New Valley Corp.*, 2000 U.S. Dist. LEXIS 12663, at *33-37 (D.N.J. 2000) (stating that the aggregate rent view upholds the statute's purpose, but not how or why); *In re Andover Togs, Inc.*, 231 B.R. 521, 547 (Bankr. S.D.N.Y. 1999) (finding the legislative history "unilluminating" and concluding the "logically sounder approach" is the aggregate rent interpretation); *Vause*, 886 F.2d at 802-03 (discussing the legislative history of section 502(b)(6) without addressing the time versus rent debate). The Court concludes that statute's purpose and legislative history support the time approach.

### 3. Equitable Principles Favor the Time Approach

Both parties assert that equitable principles favor their respective interpretations. The Landlord argues that taking a sampling of the aggregate rent more fully satisfies a landlord's expectation interest in the entire lease term and more fairly balances an otherwise "artificial reduction" of the landlord's claim. (Br. at 14.) The Debtor argues that there is no evidence to indicate that Congress intended to satisfy a landlord's expectation damages and that equitable principles favor the time approach because the landlord has the opportunity to relet the property. (Resp. Br. at 8.)

The Landlord's contention the Court should award lessors an amount more closely representing their expectation interest conflicts with the overall reasoning behind limiting

8

landlords' claims in the statute. The Landlord emphasizes that the "fundamental principle underlying claims for rejection damages" is the remedy that would be due under state and contract law for breach of contract: the "contracting party's expectation interest." (Reply. Br. at 7.) However, expectation interests cannot override the general purpose and reasoning behind the statute's limit on landlords' claims. Congress included the landlord cap to "compensate landlords for their actual damages while placing a limit on large future, speculative damages which would displace other creditors' claims." *Vause*, 886 F.2d at 802 (emphasis omitted).

The time approach better comports with Congress's intent to avoid granting claims based on future, speculative rent by restricting damages to rent due under the beginning of the lease rather than end. Landlords are protected more than general unsecured creditors in that they can mitigate their loss by reletting the property in the future. *Connectix*, 372 B.R. at 494. If the purpose of the 15% cap is to balance the rights of lessors with those of unsecured creditors, it follows that the cap should not include a portion of damages that landlords can recover to the detriment of unsecured creditors, who by nature do not have the same opportunity. Furthermore, nothing in the statute's language or legislative history suggests that landlords' expectation interests should be approximated in section 502(b)(6). *Id.* Consistent with the purpose of the statute and congressional intent to balance the interests of creditors and landlords, the Court holds that equitable principles favor the time approach.

## CONCLUSION

For the foregoing reasons, the judgment entered by the Bankruptcy Court in favor of the Debtor and against the Landlord on September 3, 2010, including the underlying conclusions of law, is HEREBY AFFIRMED.

**IT IS SO ORDERED.**

Dated: February 11, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE